IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANE R. BUCHANAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXPERIAN INFORMATION SOLUTIONS, )<br>INC., EQUIFAX INFORMATION )<br>SERVICES LLC, TRANS UNION, LLC, )<br>COMENITY CAPITAL BANK, )<br>)<br>Defendants. | Civil Action No. 24-793 |

## MEMORANDUM ORDER

Presently pending before the Court is Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration and Brief (Docket Nos. 35, 36), Plaintiff's Response (Docket No. 37), and Experian Information Solutions, Inc.'s Reply (Docket No. 38). For the reasons set forth herein, the Court will **GRANT** the motion.

Plaintiff Shane R. Buchanan ("Buchanan") filed suit on May 31, 2024, against Defendants **Experian Information Solutions, Inc. ("EIS")**; Equifax Information Services, LLC; Trans Union LLC; and Comenity Capital Bank (collectively referred to as "Defendants"). (Docket No. 1). Therein Buchanan has alleged that Defendants' inaccurate credit reporting—particularly with respect to his payment on a Comenity Credit Card Account—resulted in a loss of credit, among other injuries. (*Id.*). Buchanan alleges that Defendants thus violated the Fair Credit Reporting Act ("FCRA"), and he is seeking actual, statutory, and punitive damages under the FCRA, attorney's fees and costs, and any other relief this Court may deem appropriate and just. (*Id.*).

EIS filed an answer to Buchanan's Complaint without waiving its arbitration rights (Docket No. 27), and now moves to compel arbitration pursuant to Section 4 of the Federal Arbitration Act,

9 U.S.C. §§ 1–16.  (Docket No. 35).  Under the Federal Arbitration Act, "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Buchanan opposes arbitration and submits a declaration to the Court wherein he states, under penalty of perjury, that he did not agree to arbitrate disputes with EIS when he signed up for credit monitoring.  (Buchanan Declaration, Docket No. 37-2).  Accordingly, the Court must determine whether EIS and Buchanan entered a valid agreement to arbitrate.

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  The second step falls away when there is "clear and unmistakable evidence" that the arbitration provision contains a valid delegation clause.  *Pricharda v. Checkr*, Inc., No. 5:22-CV-3180, 2022 WL 16749033, at *2 (E.D. Pa. Nov. 7, 2022) (quoting *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021)).  State-law principles determine whether the parties agreed to arbitrate.  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under Pennsylvania law, "[c]onsent by both parties to the specific terms of the contract is essential to the formation of such an agreement."  *Martha Co. v. Nationwide Mut. Ins. Co.*, 473 F. Supp. 1029, 1040 (M.D. Pa.1979).  The party seeking arbitration has the burden of demonstrating that a valid agreement to arbitrate exists between the parties.  *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (quoting *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998)).  The Court may decide arbitrability as a matter of law under the applicable state's law

"only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288–89 (3d Cir. 2017).

In this matter, the Court need only decide whether a valid arbitration agreement exists between EIS and Buchanan.[1] EIS argues that there is a valid agreement to arbitrate between itself and Buchanan and, to that end, EIS proffers the declaration of Dan Smith, the Director of Product Operations for ConsumerInfo.com, Inc., doing business as Experian Consumer Services ("ECS"). (Docket No. 36-1). Smith declares that EIS is an affiliate of ECS, and both are subsidiaries of Experian Holdings, Inc. (*Id.* at 2). In his role as Director of Product Operations, Smith is familiar with CreditWorks, Experian's credit monitoring service. (*Id.* at 1). Smith indicates that he reviewed Buchanan's April 10, 2019, enrollment in CreditWorks. (*Id.* at 3). And Smith further declares—based on his personal knowledge and "familiarity with the CreditWorks enrollment process" (*id.* at 1)—that, to enroll in CreditWorks, Buchanan had to complete two webforms. (*Id.* at 3). Upon completion of the first webform, Buchanan would have been presented with a second form asking for certain biographic information, a username, and password. (*Id.*). "Immediately below the boxes to enter and confirm his password, was the following disclosure: 'By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.'" (*Id.*). The "Terms of Use Agreement" was hyperlinked to the full text of the agreement for Buchanan's review. (*Id.* at 4). The "Terms of Use" in effect at the time of Buchanan's enrollment in CreditWorks contained an "Arbitration Agreement" that requires arbitration of claims against ECS and its affiliates and

---

[1]   As EIS points out in its Reply, Buchanan does not challenge the enforceability of the delegation clause; therefore, the Court herein limits its inquiry to whether there was a valid agreement to arbitrate. *See Pricharda,* 2022 WL 16749033, at *2.

3

incorporates AAA rules.  (*Id.* at 6).  EIS rests its argument for arbitration on Smith's account of what Buchanan would have seen at the time he enrolled in CreditWorks.

In response, Buchanan offers his own declaration wherein he declares under penalty of perjury that he was not aware that he agreed to arbitrate his claims against EIS when he signed up for credit monitoring.  (Buchanan Declaration, Docket No. 37-2 at 10).  He further declares that: he "never heard of CreditWorks" until filing this lawsuit; he "did not see an arbitration agreement, or any mention of an arbitration agreement, when [he] signed up for credit monitoring"; and, when he signed up for credit monitoring, he "did not click on anything that notified [him] that [he] would be waiving [his] right to a jury."  (*Id.* at 11-13).

Considering what has been presented to the Court, it is apparent that Buchanan agreed to arbitrate disputes between himself and EIS—as an ECS affiliate—when he signed up for credit monitoring.  Buchanan protests this conclusion and argues that Smith's declaration cannot be relied on because Smith lacks personal knowledge of the facts he attests to, and because Smith cites no internal records that establish that an IP address associated with a device used by Buchanan was used on April 10, 2019, to enroll in CreditWorks.  However, for the reasons stated by numerous courts to consider this same invitation to reject declarations penned by Dan Smith in similar challenges to arbitration agreements, this Court declines to reject the declaration and is satisfied that Smith has sufficient firsthand knowledge for his declaration.  *Buelna v. Experian Info. Sols., Inc.*, No. 3:23-CV-724-CCB-SJF, 2024 WL 3873694, at *3 (N.D. Ind. Aug. 20, 2024) ("Smith did not have to be in the room with Buelna when she enrolled to have firsthand knowledge. His knowledge of the enrollment process, including the forms a person must complete to enroll, is sufficient firsthand knowledge upon which to base the declaration."); *George v. Experian Info. Sols.*, No. 23-CV-02303-LKG, 2024 WL 3013146, at *8 (D. Md. June 14, 2024) ("Plaintiff simply

4

represents to the Court that she does not recall agreeing to the CreditWorks Terms of Use Agreement. Plaintiff's lack of recollection in this regard, without more, is not sufficient to rebut the evidence before the Court showing that she agreed to the CreditWorks Terms of Use Agreement."); *Jenkins v. Experian Info. Sols., Inc.*, No. 1:23-CV-1634 (PTG/WBP), 2024 WL 4100258, at *2 (E.D. Va. Sept. 6, 2024) ("The Court finds, however, that the Smith affidavit is based on Mr. Smith's personal knowledge and does not contain otherwise inadmissible evidence.").

Moreover, the Court rejects Buchanan's argument that even if this Court accepts the Smith Declaration, the "clickwrap agreement" by which Buchanan is alleged to have agreed to arbitrate his claims is unenforceable. Buchanan argues that the agreement is not enforceable because he was not required to click into the Terms of Use Agreement, nor to scroll all the way through it, so he was not put on adequate notice of the terms of agreement, like arbitration, before purportedly agreeing thereto. However, contrary to Buchanan's argument, courts have routinely found "clickwrap" agreements—"online agreements where users must click on an acceptance after being presented with terms and conditions" to manifest their asset, *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017)—are enforceable. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 334 (W.D. Pa. 2020). Not only that, but an overwhelming number of courts that have considered arguments presented by plaintiffs similarly situated to Buchanan, concerning clickwrap agreements like the one at issue here, have found adequate notice of the arbitration provision. *Coulter*, No. 2021 WL 735726, at *5 ("By clicking the 'Submit Secure Order' button, Plaintiff manifested his assent to the Terms of Use Agreement."); *Myers v. Experian Info. Sols. Inc.*, No. CV-23-01901-PHX-DJH, 2024 WL 2278398, at *4 (D. Ariz. May 20, 2024) ("[A] reasonable Internet user would have seen the notice and would have been able to locate the Terms

of Use Agreement via the hyperlink."); *Driskill v. Experian Info. Sols., Inc.*, No. 24-CV-00583-AMO, 2024 WL 4453292, at *4 (N.D. Cal. Oct. 8, 2024) ("CreditWorks conspicuously provided the Terms of Use … , included a hyperlink to the terms in a contrasting color, and informed the user that 'Create Your Account' would indicate assent to the terms.  Based on these features, the Court concludes that the website design provides constructive notice of the Terms of Use, including the arbitration provision.").  Buchanan has presented no persuasive reason to depart from the courts' broad consensus that arbitration agreements such as the one here are enforceable.  Accordingly, the Court enters the following Order:

    AND NOW, this 18th day of November 2024,

    IT IS HEREBY ORDERED that Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Docket No. 35) is GRANTED and Plaintiff is compelled to submit his claims against EIS to arbitration in accordance with the parties' arbitration agreement.

    IT IS FURTHER ORDERED that this action is STAYED as to Plaintiff's claims against EIS pending completion of arbitration.

    SO ORDERED.

    */s/ W. Scott Hardy*
    W. Scott Hardy
    United States District Judge

cc/ecf:    All counsel of record